IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRENCE L. MILLER, ) | |
| K61958, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24-cv-1597-MAB |
| ) | |
| MRS. CUNNINGHAM, ) | |
| L. LUKING, ) | |
| REBECCA RIGGS, ) | |
| J. GARRETT, ) | |
| DR. BABICH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Terrence Miller, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center (Lawrence), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff alleges that from approximately December 14, 2023, through May 8, 2024, he suffered from chronic pain associated with hip degeneration because medical professionals and grievance officials refused to render aid or intervene on his behalf. Plaintiff seeks monetary compensation for the months he spent suffering in pain.

Plaintiff's Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

---
[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's

1

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

On December 14, 2023, Plaintiff was transferred to Lawrence Correctional Center. (Doc. 1 at 11). Prior to his transfer, Plaintiff alleges that on October 3, 2023, he saw Dr. Jose Acevedo and received a prescription for Tramadol to manage his pain. (Doc. 1 at 11). Shortly after arriving at Lawrence, Plaintiff placed a sick call request in January of 2024 to be seen about his chronic hip pain. He saw a nurse and was referred to Defendant Luking, a nurse practitioner. Plaintiff saw Luking in late January or early February. He explained that the generic medication for Voltaren was not working for the pain in his hip, and that it had been ineffective for years.

Luking acknowledged Plaintiff's degenerative condition in his hip, and she indicated she was aware from his medical file that Voltaren was ineffective. Plaintiff claims he told Luking that he had secured a copy of his own medical file, which reflected Dr. Acevedo's Tramadol prescription. (Doc. 1 at 11). Luking responded that the "regional doctor" would not give him Tramadol because "he doesn't like doing that."

---

limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

(Doc. 1 at 11). Plaintiff asked why, and Luking simply responded, "that's just how he is." (*Id.*). Plaintiff asked what could be done about his extreme, chronic, and constant pain, to which Luking responded he would just have to tough it out until he could have surgery. When asked how long the wait might be, Luking said she was unsure, but it could take up to a year. (Doc. 1 at 11).

Plaintiff eventually prepared a grievance about his pain on April 18, 2024. He explained that he had chronic severe pain, that he walked with a limp, that it impacted his ability to sleep, and that his hip sometimes gave out and caused him to fall. (Doc. 1 at 12). He also indicated that he possessed the medical documents to support Dr. Acevedo's Tramadol prescription. During the grievance review process, Defendant Cunningham (the healthcare unit administrator) responded that there was no indication in Plaintiff's chart about Tramadol. (Doc. 1 at 12). With this information, Defendant J. Garrett (a grievance officer) recommended that the grievance be deemed moot, and he indicated that he was not a medical professional so he could not make determinations about the appropriate plan of care. On May 6, 2024, the Chief Administrative Officer signed off on the grievance. On May 23, 2024, Defendant Rebecca Riggs (a member of the Administrative Review Board (ARB)), found that the issue was appropriately handled by the prison, and she denied the grievance appeal. (Doc. 1 at 13).

Plaintiff argues that Defendant Luking's conduct amounts to deliberate indifference. (Doc. 1 at 14). He also alleges that Defendant Cunningham lied in her grievance response when she said there was no documentation about Tramadol in his file, and she did so to prevent him from securing adequate care. (Doc. 1 at 14-15). Plaintiff

3

claims that Defendants Garrett and Riggs also acted with deliberate indifference because they did not ask to see the documents he had about Tramadol, which means their investigations of his grievance were not thorough and prevented him from accessing needed care. (Doc. 1 at 15-18). Finally, he alleges that Dr. Babich was deliberately indifferent to his medical condition from December 14, 2023, to May 8, 2024, because he knew of Plaintiff's degenerative hip condition but did not give him Tramadol for his pain. (Doc. 1 at 18).

Plaintiff seeks monetary compensation from all defendants. (Doc. 1 at 20). In support of his complaint, he submitted his grievance documents, which are largely consistent with the allegations described in his complaint. However, notably, he omitted the notations in the grievance responses by Cunningham and Garrett that he was seen for a follow-up MRI on April 3, 2024, and that as of May 2, 2024, he had yet to be seen by a provider for a follow-up appointment to educate him on the current plan of care. (Doc. 1 at 8). Garrett specifically noted in his rationale for finding the grievance moot that, "grievant continues to be seen by a medical professional in order to address medical concerns; and this Grievance Officer is not a medical professional and cannot make determinations concerning medical plan of care." (Doc. 1 at 9).

Based on the allegations in the Complaint, the Court designates the following counts:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Luking or Dr. Babich;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Cunningham, Garrett and Riggs for their role**

4

**in responding to Plaintiff's grievance about his chronic hip pain.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### DISCUSSION

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Here, Plaintiff's allegations about his interaction with Defendant Luking are sufficient to suggest that she personally refused to provide him any form of care to

alleviate his serious pain, despite acknowledging that the medication he currently had was ineffective. By contrast, Plaintiff also faults Dr. Babich for allowing him to suffer from December of 2023 to May of 2024, but he does not describe a single instance when he was seen by Dr. Babich or ever contacted him about his need for care. At most, his complaint suggests that Luking might have told him Dr. Babich would not authorize Tramadol, but this statement by a third party about Babich's expected course of action is not sufficient to attribute personal fault to Babich. At this juncture Plaintiff's allegations about Dr. Babich are too vague to proceed against Babich on the theory that Babich personally was involved in his care and caused him harm.

In addition to the medical providers, Plaintiff faults Defendants Cunningham, Garrett and Riggs for their handling of his grievance about chronic serious pain. Generally, a response, even a faulty response, to a grievance by a prison official who is not involved in the underlying issue is not sufficient to give rise to liability. *See, Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Additionally, prison officials who do not possess medical expertise are generally entitled to defer to medical professionals on the course of treatment. *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008) ("the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one."). However, the Seventh Circuit has suggested if an individual reviewing a grievance failed to exercise their authority to investigate or remedy a serious wrong, or if it was obvious that the

6

response from medical staff was inadequate, then they might be held liable for their role in reviewing an inmate grievance. *See e.g., Hayes*, 546 F.3d at 527-28 (finding that officials who quickly contacted medical professionals, and did not have obvious reason to believe their responses were inadequate, did enough to investigate an inmate's grievance of a serious medical situation); *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (officials who had actual knowledge of an inmate's serious problem from highly detailed grievances and correspondence may be liable for turning a blind eye to the situation).

Plaintiff's allegations about Cunningham are straightforward. She is the healthcare unit administrator, and he claims that she lied in response to his grievance when she stated that his medical records contained no mention of Tramadol. Assuming he is correct about this, such action could amount to deliberate indifference, so he will be allowed to proceed against Cunningham.

The situation as to Garrett and Riggs, however, is more complicated. These are grievance officials who responded promptly to Plaintiff's grievances and relied on a detailed response from the medical staff when doing so. Plaintiff faults these two, particularly Garrett, for failing to ask him to see his copy of medical records from Dr. Acevedo that showed the Tramadol prescription and that Plaintiff referenced in his grievance. He argues that without asking for this proof, Garrett's investigation was not complete. If the contents of the grievance documents showed that Garrett's reasoning turned solely on him crediting Cunningham over Plaintiff, that might be enough to suggest the sort of claims discussed in *Hayes* and *Perez*, where an investigation into a grievance may be inadequate. However, Garrett relied on more than just Cunningham's

7

statement about past records. Cunningham also informed Garrett that Plaintiff had just undergone an updated MRI for his condition on April 3, 2024, and that he was to be seen for updated education on his course of care. Garrett relied on this by indicating one of his reasons to deny the grievance as moot was because care was ongoing. With the indication care was ongoing, the Court does not find that Plaintiff has plausibly suggested that Garrett was deliberately indifferent to Plaintiff's situation or that he failed to adequately investigate.

As for Riggs, her only role was to review what was done at the prison level, and Plaintiff has not plausibly suggested given the above analysis about Garrett that she was somehow wrong in deferring to the ruling at the prison level by the healthcare unit administrator. As such, Plaintiff will not be allowed to proceed against Riggs or Garrett.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** at this time without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In determining whether to recruit counsel, the Court considers two factors. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff's Motion and exhibits demonstrate that he has made numerous attempts to secure his own counsel. (Doc. 3 at 10-14). However, the Court must also consider the complexity of the case and Plaintiff's competence to pursue the matter without counsel. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010). Plaintiff argues that his case will involve complex issues and may require expert

8

testimony. He also details his medical issues in addition to the ones described in the complaint, which he contends will make it difficult for him to pursue this case. While Plaintiff's concerns are certainly valid, it is very early in this case and the next steps will be very straightforward. Further, at this early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged."). No one has been served in this case, and a discovery schedule has not been entered. Although the motion is denied at this juncture, Plaintiff may renew his request for counsel if necessary, as the case progresses.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendant Luking, and **Claim 2** survives against Defendant Cunningham. By contrast, Plaintiff has failed to state a claim against Defendants Dr. Babich, J. Garrett, or Rebecca Riggs so the Clerk of Court is **DIRECTED** to **TERMINATE** these defendants.

The Clerk of Court is **DIRECTED** to prepare for Defendants Luking and Cunningham: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA order in this case because it may involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

**DATED: August 20, 2024**

                                                               */s/ Mark A. Beatty*
                                                               **MARK A. BEATTY**
                                                               **United States Magistrate Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.